By the Court, Cowen, J.
The Knowers deny knowledge of Strong’s execution; but that they or their attorneys had not information or belief that it was in the sheriff’s hands, or soon to be there, is scarcely compatible with the fact that the day selected by them to order their execution forward was the very same day that the second execution was received by the sheriff. The question then is, whether a creditor may, after seizure, stay his execution under an arrangement with his debtor, till he finds another issued or on the point of issuing; and still save himself by directing the sheriff to proceed. The answer is by no means full and particular as to the nature of the agreement under which the delay took place; and far from being so as to the amount obtained from the defendants by way of instalment under pretence of the demands not in judgment, of which also a very lame account, or rather no account at all is given. There is scarcely any thing, therefore, to take from the execution the character of having been used not merely for the direct purpose of collecting the debt endorsed upon it, as it should have been, but over and above, for management of the defendants’ means inconsistent with the rights of other execution creditors.
Independently of such considerations, I cannot distinguish the case in principle from those cited on the argument. I collect from the letter of the atirrneys and other circumstances, that *380 the sheriff had instructions not to sell on the Knower execution till directed by the plaintiffs; and there is no doubt, on the language and conduct of the parties, that the intent was to delay the sheriff until, by subsequent executions, the loss of the first should be brought into danger. This, then, is the case of Kellogg v. Griffin, (17 John. Rep. 274.) Not literally for there the sheriff was directed to guard against junior executions. Here, the plaintiffs chose to do it in person; but the effect is the same.
A more doubtful question may suggest itself on the expediency of interfering summarily. This was done in the late case, of Kimball v. Munger, (2 Hill, 364,) though I perceive on farther examination than I bestowed upon that case, that Patteson, J. in Barber v. Mitchell, (2 Dowl. Pr. Cas. 574,) thought the better way was to have a somewhat similar question decided by an action against the sheriff. There, however, the plaintiff in the first execution had not interfered with it at all; and the imputation of fraud was levelled against the sheriff and defendant. At least this was the main ground of the motion. In a case of doubt, a trial of some kind would be the better course; perhaps the only proper one. But it is difficult to see any reason for the creditor in the prior execution claiming this, where the motion rests upon his own interference. It gives him the additional advantage of .contradicting or explaining the mover’s case by his own affidavit. The sheriff being indifferent will withhold nothing; or, if material evidence will probably be cut off, the fact can be shown. In Barber v. Mitchell, which was in the practice court before Patteson, J. he said: “ The circumstances are such that I think the party has a right to have the question tried, if he thinks fit.” Again: “ The case here is not so clearly fraudulent on his [the sheriff’s] part, as to authorize me in interfering.” In Kimball v. Munger, which proceeded on the plaintiff’s delay, the case coming fully up to those which had pronounced such delay constructively fraudulent, we did interfere without waiting for a trial. The summary course, when warranted by the facts, also saves the sheriff from expense and trouble.
*381 Now I understand the clear rule to be that, if the plaintiff will interfere and direct the sheriff not to sell, he takes away the force of his execution as to junior seizures. This was held in Storm v. Woods, (11 John, Rep. 110,) although the fairness of the debt for which the senior execution issued was not questioned, and the delay arose from motives of humanity. The judge pronounced the first execution fraudulent, and the plaintiff was nonsuited. There may be exceptions depending on the peculiar condition of the property; but no excuse is set up in answer to the present motion which can be admitted with safety to the general rights of execution creditors. Justice to them requires that goods which at the time may be sufficient to satisfy all, should not be left in such a situation that they may be consumed or eloigned. Beside, if the plaintiff do not mean to sell, why should he deliver the execution at all ? The suspicion arises that the object may be to delay others by the levy for a debt wholly or partially simulated, or to coerce the payment of some debt not yet in judgment, or with some other view collateral to the lawful purpose of the writ. At all events, the law and the sheriff are not left to take their course. It is not they, but the plaintiff who is acting by rhe sheriff whom he sees fit to instal as his private agent. The goods being no longer in the custody of the law, but rather in that of the plaintiff, there is no foundation for the lien and preference which the law can attach as a consequence of its own regular’ action only. The attempt to use process thus clearly rendered dormant by the party’s own act, against others who desire to go on in a legal course, is an abuse which, as it seems to me, forms a proper subject for summary interference.
In consequence of feeling some doubt whether I had not gone an inexpedient length in Kimball v. Munger, and whether questions of this character had not better be left to an action against the sheriff, I reserved the present case for conference with the other judges at the general term in May. My doubts arose mainly from not having seen the case of Barber v. Mitchell, when I decided Kimball v. Munger, and the fear that I did not then sufficiently consider the point. The motion, was *382 afterwards still farther reserved for reflection. Barber v. Mitchell has again been examined; and we are satisfied that the entire question which the counsel of Strong wishes to submit, cannot perhaps be reached by an action against the sheriff. It was said by Patterson, J. in the case cited, that it was the appropriate remedy for trying the fraud of the sheriff; but that if the whole charge fell upon the plaintiff, the sheriff could not be made liable. To warrant an action against him, he must have been a party to the fraud. Now the sheriff may be and commonly is quite ignorant whether the delay be either actually or constructively a fraud upon other creditors, which seems to be the true question. It was agreed in Barber v. Mitchell, to be the only question; and Patteson, J. said that, where the charge pointed against the plaintiff, an issue must be directed. In saying so, he could only have intended a case where the matter is left in doubt by the affidavits, according to the well known rule that, if there be no serious question of fact upon a non-enumerated motion, the court disposes of the case on the affidavits, or other proofs appropriate to that kind of motion. I understand that, in the case before us, the stress of the enquiry is directed against the fraudulent delay of the plaintiffs in the prior execution ; and if we turn Strong over to an action, he may thus be entirely shut out from a trial of the main question. Could I see any distinction between this and the cases heretofore. decided by this court in respect to dormant executions, I would award an issue; but I cannot. I think the execution of the Knowers must be regarded as at least constructively fraudulent within those cases. Nor does the question come within the recent decisions of the court for the correction of errors requiring questions of fraud in certain cases to be submitted to a jury. Those are questions arising upon the statute of fraudulent assignments or mortgages.
On the whole, we think the motion must be granted.
Ordered accordingly.